# EXHIBIT B



## STOCK TRANSFER AGENCY AGREEMENT

This STOCK TRANSFER AGENCY AGREEMENT (the "Agreement"), effective as of
_November 1_, 20_03_ (the "Effective Date"), is between _Advanced Bio/Chem, Inc._
_____ (the "Company"), a _Nevada_ corporation, with its
principal office at _H800 Research Forest Dr, The Woodlands, TX 77381_ and Computershare Trust
Company, Inc. ("Computershare"), a Colorado limited purpose trust company, with its principal office at 350
Indiana Street, Suite 800, Golden, Colorado, 80401.

### WITNESSETH:

WHEREAS, the Company desires to enter into an agreement with Computershare to provide
transfer agent, registrar and other administrative services as set forth in this Agreement and the Exhibits
and Schedules attached hereto; and

WHEREAS, Computershare desires to provide such services to the Company;

NOW THEREFORE, in consideration of the premises and mutual covenants contained herein, the
parties agree as follows:

### ARTICLE 1

### DEFINITIONS

1.      Whenever used in this Agreement, the following words and phrases shall have the
following meanings:

      a) "Affiliate" means, with respect to any party to this Agreement, any other person or
entity that, directly or indirectly, through one or more intermediaries, controls, is
controlled by, or is under common control with, such party. As used herein, "control"
means the direct or indirect ownership of fifty percent (50%) or more of the outstanding
capital stock or other equity interests having ordinary voting power.

      b) "Board" means the Board of Directors of the Company, and where a committee thereof
is authorized to take action on behalf of the Board, it shall also mean such committee.

      c) "Business Day" means any day other than a Saturday, a Sunday, or a day on which
the New York Stock Exchange or banking institutions in the State of Colorado are
authorized or obligated by law or executive order to close.

      d) "Officer" means the Company's President, Senior Vice Presidents, Vice Presidents,
Secretary, Assistant Secretary, Treasurer and Assistant Treasurer, or any other
employee of the Company duly authorized (which authorization shall be certified by
the Company's Secretary) to execute any certificate, instruction, notice or other
instrument on behalf of the Company.



e) "Out-of-Pocket Expense" means any expense reasonably incurred by Computershare pursuant to this Agreement, including: (i) postage; (ii) overnight delivery charges; (iii) paper stocks and printing costs; (iv) broker, registrar, bank and stock exchange fees; (v) long distance telephone charges; and (vi) such other expenses reasonably incurred by Computershare pursuant to this Agreement.

f) "Shares" mean any or all of each class of the shares of capital stock of the Company which from time-to-time are authorized or issued by the Company and identified in a Certificate of the Secretary of the Company.

2.   Other defined terms used in this Agreement shall have the meanings hereinafter provided.

## ARTICLE 2

## APPOINTMENT OF COMPUTERSHARE

1.   The Company hereby appoints Computershare to perform the services described herein and as more particularly described in the Exhibit A attached hereto (the "Services"), and Computershare hereby accepts such appointment and agrees to perform the Services in accordance with the terms hereinafter set forth. The Company understands that the Services are provided on a non-exclusive basis.

2.   The initial term of this Agreement shall commence as of the Effective Date, and shall end on the day that is three years from the Effective Date, unless otherwise terminated in accordance with this Agreement (the "Initial Term"). Following the Initial Term, this Agreement shall automatically renew for additional three year periods (each a "Renewal Term"), unless either party provides written notice to the other party not less than sixty (60) days prior to the expiration of such period of its election not to renew the Agreement.

3.   The Company shall pay Computershare for the services in accordance with the fees set forth on Exhibit B (the "Statement of Fees"). The Company agrees that, upon notice to the Company, the Fees may be modified from time to time; provided, however, that such fees shall not be modified during the first year of this Agreement.

4.   In connection with the appointment of Computershare as transfer agent, the Company shall deliver immediately to Computershare the following documents, each of which shall be certified by the Company's Secretary or Assistant Secretary:

a) A copy of the Board resolution (in the form attached as Schedule I) in which the Company appoints Computershare to serve in the designated capacity;

b) A Corporate Information Schedule (in the form attached as Schedule II) in which the Company sets forth the number of shares of stock for each class authorized and issued; the number of shares reserved for issuance and the specific purpose for which each reservation was created; the principal address of the Company; the name and address of the Company's legal counsel; the names and specimen signatures of all the Officers whose signatures may appear on certificates; the names and address of any other transfer agents or registrars of the Company's stock; the names and addresses of any



person to whom a copy of the transfer journal shall be provided; and such other information as may be requested by Computershare from time to time;

c) A list of prior Company names and dates applicable;

d) A list of the rates and CUSIP numbers of all stock splits;

e) A copy of the Company's Articles of Incorporation;

f) A copy of the Company's by-laws;

g) A specimen certificate for each class of Shares;

h) A list of the Officers authorized to provide instructions to Computershare, with specimen signatures of such Officers;

i) A sufficient supply of blank Share certificates, which certificates shall promptly be renewed upon Computershare's request. (An Officer shall properly sign such blank Share certificates, and, if required by the Charter or by-laws, such certificates shall bear the corporate seal.)

5.      In connection with its appointment, Computershare shall adopt as part of its records all lists of holders of record of the Company's Shares, books, documents, and records which have been employed by any former agent of the Company for the maintenance of the ledgers for the Shares; provided, however, such ledger is certified as authentic, complete and correct by an Officer or the Company's former transfer agent. Such records shall include, among other things, a complete list of certificates upon which stop transfer orders have been placed, the name and address of each shareholder of record of such certificate, the number of shares held by each such shareholder and the date of issuance of each such certificate. In adopting the records of the prior transfer agent, the Company agrees to defend, indemnify and hold harmless Computershare and its Affiliates and each of their directors, officers, employees, attorneys and agents (collectively, the "Indemnified Parties"), from and against all demands, claims, liabilities, losses, damages, settlements, awards, judgments or expenses (including, without limitation, reasonable attorneys' fees) which arise out of or relate to any actions taken or omitted to be taken by any former agent of the Company acting in a transfer agent or related capacity or any action taken or omitted to be taken by the Company with respect to the validity of stock issued by the Company.

6.      If any of the events set forth below occur, the Company shall promptly deliver to Computershare copies of the following documents, each of which shall be certified by the Company's Secretary or Assistant Secretary:

a) Any amendments to the Company's Articles of Incorporation;

b) Any amendments to the Company's by-laws;

c) Any resolutions of the Board which effect a change in the Officers or individuals authorized to sign Share certificates, notifications or requests, together with a



specimen signature of each new Officer;

d) Any change in the authority, capacity or status, whether by death, resignation, removal, or otherwise, of any Officer authorized to sign Share certificates;

e) Any final listing application for additional amounts of listed securities;

f) Any registration statement relating to the Company's securities which is filed with the Securities and Exchange Commission; and

g) Any other documents that Computershare may reasonably request.

7.    If any of the events set forth below occur, the Company shall promptly notify Computershare in writing as to:

a) the existence or termination of any restrictions on the transfer of any Shares;

b) the application or removal of a legend restricting the transfer of any certificate for Shares;

c) the substitution of a Share certificate without such legend with a Share certificate bearing a legend restricting such Share's transfer;

d) any authorized but unissued Shares reserved for specific purposes;

e) any outstanding shares which are exchangeable for Shares and the basis for any such exchange;

f) special instructions regarding, among other things, dividends for foreign holders; and

g) the requirement for a stop transfer order to attach to any Shares or for any other notation or transfer restriction to attach to any Shares.

## ARTICLE 3

### ISSUANCE AND TRANSFER OF SHARES

1.    Except where a stop transfer order has been entered for an account, Computershare shall transfer, pursuant to its normal operating procedures, Shares upon: (i) the presentation to Computershare of Share certificates properly endorsed for transfer if such shares are in certificate form; or (ii) upon the presentation to Computershare of stock transfer instructions properly endorsed if Shares are in uncertificated form. Such endorsed shares and transfer instructions shall be accompanied by such documents as are reasonably necessary to evidence the authority of the person making the transfer, and bearing satisfactory evidence of the payment of applicable stock transfer taxes and subject to such additional requirements as may be required by Computershare from time to time. In the case of transfers of Shares with monetary value upon death of the shareholder(s), Computershare may, when furnished with an appropriate surety bond, and without further approval of the Company, transfer Shares registered in the

4



name of the decedent where the current market value of the Shares being transferred does not exceed such amount as may from time to time be prescribed by the various states and the Company. With respect to any transfer, Computershare will, in its sole discretion, require a medallion guaranty of signature by a bank, trust company or other financial institution that is a qualified member of the Medallion Guarantee Program. Computershare may refuse to transfer Shares until it is satisfied that the requested transfer is legally authorized, and Computershare shall incur no liability for its refusal in good faith to make transfers that Computershare, in its sole judgment, deems improper, unauthorized, not in compliance with its procedures, or until it is satisfied that there is no basis to any claims adverse to such transfer.

2. With respect to Shares in certificate form, certificates representing Shares that are subject to restrictions on transfer (e.g., securities acquired pursuant to an investment representation, securities held by controlling persons and securities subject to stockholders' agreements) shall be stamped with a legend describing the extent and conditions of the restrictions or referring to the source of such restrictions, except as otherwise instructed by the Company. With respect to any proposed transfer of control or exempt securities, Computershare may request a legal opinion from the Company's counsel, which legal opinion shall be satisfactory to Computershare in its sole discretion, and Computershare assumes no responsibility with respect to the transfer of restricted securities in accordance with such opinion.

3. Computershare is hereby authorized and directed to issue and register, without notice or approval by the Company, new Share certificates to replace certificates reported lost, stolen, mutilated or destroyed, upon compliance with Computershare's policies, which includes receipt by Computershare of: 1) an affidavit of non-receipt; and 2) an open penalty bond of indemnity in a form and substance and from a surety company satisfactory to Computershare. In each such case, the shareholder shall be solely responsible for the payment of any premium.

4. Computershare shall issue and mail at the Company's expense subscription warrants for Shares, Shares representing stock dividends, exchanges or splits, and act as conversion or other agent upon receipt of written instructions from an Officer and such other documents as Computershare may deem necessary.

5. In the event that a certificate is, for any reason, in the possession of Computershare and has not been claimed by the registered holder or cannot be delivered to the registered holder through customary channels, Computershare shall continue to hold such certificate for the registered holder subject to applicable abandoned property regulations or other laws.

6. Computershare shall not be responsible for the payment of any original issue or other taxes, fees or imposts required to be paid by the Company or a purchaser of Shares in connection with the issuance or purchase of any Shares.

## ARTICLE 4

## DIVIDENDS AND DISTRIBUTIONS

In the event that the Company pays dividends to shareholders, the Company and Computershare shall proceed as follows:



1.      The Company shall furnish to Computershare a copy of a resolution of its Board, certified by the Company's Secretary or Assistant Secretary, setting forth the following: (i) the date of the declaration of a dividend or distribution; (ii) the date of accrual or payment;(iii) the record date for the determination as of which shareholders shall be entitled to payment, or accrual; (iv) the amount per Share of such dividend or distribution; and (v) the payment date on which all previously accrued and unpaid dividends are to be paid.

2.      In accordance with all resolutions setting forth the details of dividend payments or other distributions as set forth above, Computershare shall: (1) in the case of shareholders who are participants in a dividend reinvestment and/or cash purchase plan of the Company, reinvest such cash dividends or distributions in Shares of the Company in accordance with the terms and conditions of such plan; and (2) in the case of shareholders that are not participants in any such plan, and provided that funds are provided to Computershare on or prior to the payment date, make payment of such cash dividends or distributions to the shareholders of record as of the record date by mailing a check, payable to the registered shareholder, to the address of record or mailing address. Alternatively, upon proper request by a registered shareholder, and provided that funds are on hand at Computershare on or prior to the payment date, Computershare shall make payment to such shareholder through the Automated Clearing House in accordance with the instructions provided by the shareholder. Computershare shall not be liable for any improper payment made in accordance with a certificate, resolution or instruction of the Company or shareholder described in the preceding paragraph.

3.      Computershare shall in no way be responsible for the determination of the rate or form of dividends or distributions due to the shareholders.

4.      At its sole discretion, Computershare is authorized to stop payment of any dividend payment check it issues when such check has not been presented for payment and the payee notifies Computershare that such check has not been received, has been lost, stolen or destroyed, or is unavailable to the payee for any other cause beyond his control. In such instances, Computershare is authorized to debit the Company's checking account to replace a replacement check.

5.      Computershare shall file with the proper federal, state and local authorities such appropriate information returns as are required by law to be filed by the Company concerning the payment of dividends and distributions.

## ARTICLE 5

### CONCERNING COMPUTERSHARE

1.      The Company agrees that Computershare shall not be liable for any action taken or omitted to be taken in connection with this Agreement, except that Computershare shall be liable for direct losses incurred by the Company arising out of Computershare's gross negligence or willful misconduct. Any liability of Computershare shall be limited to the amount of fees paid by the Company to Computershare in the preceding twelve (12) months for the Services, it being understood that the Services could not be provided to the Company by Computershare at the prices set forth herein without the foregoing liability limitation. Under no circumstances shall Computershare be liable for any special, indirect, incidental, punitive or consequential loss or damage of any kind whatsoever (including, but not limited to, lost profits), even if Computershare has been advised of the possibility of such loss or damage.



The parties hereto agree that, in light of the unique characteristics of each instance in which Services are to be performed, Computershare makes no representation or warranty that any of the Services shall be performed at any set time or under any deadline, and Computershare shall not be liable for any change in the market value of any security at any time.

2. Notwithstanding anything to the contrary, Computershare shall not be liable in connection with\

    a) The legality of the issue, sale or transfer of any Shares, the sufficiency of the amount to be received in connection therewith, or the authority of the Company to request such issuance, sale or transfer;

    b) The legality of the purchase of any Shares, the sufficiency of the amount to be paid in connection therewith, or the authority of the Company to request such purchase;

    c) The legality of the declaration of any dividend by the Company, or the legality of the issue of any Shares in payment of any stock dividend;

    d) The legality of any recapitalization or readjustment of the Shares;

    e) Acting upon any oral instruction, writing or document reasonably believed by Computershare to be genuine and to have been given, signed or made by an Officer; and

    f) Processing Share certificates that it reasonably believes bear the proper manual or facsimile signatures of an Officer and the proper counter-signature of Computershare or the prior transfer agent or registrar.

3. In providing Services under this Agreement, Computershare may rely upon any listing applications, letters, or other written instruments executed by an Officer and directed to the Exchange and upon any opinions submitted to the Exchange by counsel for the Company as though such letters, instruments, or opinions had been addressed or submitted to Computershare itself, and with the same rights of indemnification set forth in Article 7 hereof.

4. t any time, Computershare may apply to the Company for oral or written instructions with respect to any matter arising in connection with the provision of the Services and Computershare's duties and obligations under this Agreement. Computershare shall not be liable for any action taken or omitted to be taken by Computershare in good faith in accordance with such instructions.

5. Computershare shall maintain: (i) a record of all Share ownership by the Company's shareholders of record; (ii) a record of all Share transactions, including all issuances of Shares, transfers, and Share replacements, performed by Computershare (iii) a record of all dividend activity; (iv) a record of restrictions on any Shares of which it has been informed; and (v) a record of all other matters relating to the services provided by Computershare hereunder. At the Company's expense, Computershare shall maintain on the Company's behalf, for safekeeping or disposition by the Company in accordance with law, such records, papers, Share certificates that have been canceled in transfer or exchange, and other



documents accumulated in the execution of its duties hereunder. The records maintained by Computershare pursuant to this paragraph shall be considered to be the property of the Company and shall be made available during normal business hours upon five (5) days notice to Computershare by an Officer.

6. Computershare shall use its reasonable efforts to safeguard the inventory of blank stock certificates maintained by Computershare and shall maintain insurance coverage protecting Computershare and its clients against foreseeable losses, costs and expenses arising out of the loss or theft of any such certificates.

7. In the event of any Officer that shall have signed manually or whose facsimile signature shall have been affixed to blank Share certificates shall die, resign or be removed prior to issuance of such Share certificates, unless otherwise instructed by the Company, Computershare may issue such Share certificates as the Share certificates of the Company notwithstanding such death, resignation or removal, and the Company shall promptly deliver to Computershare such approvals, adoptions or ratification as may be required by law.

## ARTICLE 6

### TERMINATION

1. This Agreement may be terminated by either party at any time for any reason upon sixty (60) days written notice to the other party.

2. Upon providing written notice, either party may immediately terminate this agreement upon the occurrence of any of the following:

    a) any breach of any material provision of this Agreement and, where the breach is capable of remedy, failure to remedy the breach within 30 days, or such longer period as is agreed upon by the parties, after receiving written notice;

    b) any breach of any material provision of this agreement that is not capable of remedy;

    c) any party: (i) files a petition or otherwise commences, authorizes or acquiesces in the commencement of a proceeding or cause of action under any bankruptcy, insolvency, reorganization or similar law, or has any such petition filed or commenced against it; (ii) makes any assignment or general arrangement for the benefit of creditors; or (iii) has a liquidator, administrator, receive, trustee, conservator or similar official appointed with respect to it or any substantial portion of its property or assets.

    d) any failure to make, when due, any payment required pursuant to this Agreement if such failure is not remedied within ten (10) Business Days after written notice.

3. Notwithstanding the foregoing, Computershare may, upon providing written notice, immediately resign as agent hereunder and discontinue the provision of the Services if Computershare believes that providing Services hereunder may expose it to legal, regulatory or financial liability.



## ARTICLE 7

### INDEMNIFICATION

1.    The Company agrees to defend, indemnify and hold harmless Computershare and its Affiliates and each of their directors, officers, employees, attorneys and agents (collectively, the "Indemnified Parties"), from and against all demands, claims, liabilities, losses, damages, settlements, awards, judgments, fines, penalties, costs or expenses (including, without limitation, reasonable attorneys' fees) (collectively, "Losses") incurred by Computershare as a result (directly or indirectly) of or relating to Computershare's acceptance of this Agreement or provision of Services under this Agreement; provided, however, that no Indemnified Party shall have the right to be indemnified hereunder for any liability to the extent finally determined by a court of competent jurisdiction that such Losses have resulted directly from the gross negligence or willful misconduct of such Indemnified Party.

2.    This Section 7 shall survive the termination of this Agreement or the removal or resignation of Computershare hereunder.

## ARTICLE 8

### REPRESENTATIONS AND WARRANTIES.

1.    The Company represents and warrants that: (i) it has full power, authority and capacity to execute and deliver this Agreement and perform its obligations hereunder, and that this Agreement constitutes a legal, valid and binding obligation of the Company, enforceable against the Company in accordance with its terms, except as enforcement may be limited by bankruptcy, insolvency, moratorium or other laws affecting the enforcement of creditors' rights generally; and (ii) the Company is, and shall remain, in compliance with the rules and regulations of the securities exchange or market upon which its Shares are listed (the "Exchange") for the listing of additional shares sufficiently in advance to permit Computershare, upon receipt of such authorizations as may be required by the Exchange, to execute timely issuance and delivery as transfer agent and as registrar of certificates representing such additional shares.

2.    Computershare represents and warrants that it has full power, authority and capacity to execute and deliver this Agreement and perform its obligations hereunder, and that this Agreement constitutes a legal, valid and binding obligation of Computershare, enforceable against Computershare in accordance with its terms, except as enforcement may be limited by bankruptcy, insolvency, moratorium or other laws affecting the enforcement of creditors' rights generally.

3.    This Section 8 shall survive the termination of this Agreement or the removal or resignation of Computershare hereunder.

## ARTICLE 9

### BILLING AND PAYMENT

1.    Computershare shall bill the Company monthly in arrears for the Services and Out-of-Pocket Expenses incurred by Computershare during the previous month. The Company shall pay



Computershare the full amount of each such invoice within forty-five (45) days from the date of the invoice. Fees are subject to change with a thirty (30) day notice. All payments are in U.S. Dollars.

2.    In the event the Company does not make payment in full within forty-five (45) days of the date of each invoice, Computershare may assess and the Company shall pay interest at 1.5% per month (18% per annum) on the outstanding balance of the Fees.

## ARTICLE 10

## CONFIDENTIALITY

1.    The information contained in this Agreement is confidential and proprietary in nature. Except as otherwise provided in this section, each of the Company and Computershare agrees that none of its respective directors, officers, employees, or agents will divulge, furnish, or make accessible to any third party any part of this Agreement without the prior written consent of the other party.

2.    Under this Agreement, the Company shall have access to certain confidential information belonging to Computershare, which information shall include all nonpublic information pertaining to Computershare, its parent, subsidiaries, affiliates, employees, customers, representatives, and vendors (including without limitation all information furnished prior to the date of this Agreement) furnished by or on behalf of Computershare to the Company, either directly or indirectly, by any means ("Computershare Confidential Information").

3.    The Company acknowledges that: (a) all Computershare Confidential Information is considered Confidential and the property of Computershare and its customers; (b) the Company will keep all Computershare Confidential Information confidential and will not disclose the same; (c) the Company will use Computershare Confidential Information only as required to provide the Services contemplated by this Agreement; (d) the Company will not create a list or other compilation containing any Computershare Confidential Information for any purpose other than to perform under this Agreement; (e) except as expressly provided for herein, the Company will not provide, directly or indirectly, the Computershare Confidential Information to any other party for any purpose.

4.    The Company agrees that all Computershare Confidential Information, including, without limitation, any information or materials or resulting from the performance of the Services hereunder, is proprietary to Computershare. Except for any information initially provided by the Company to Computershare, all information or materials, including all microfiche, electronic mails, hard or soft documentation, computer or data system information, financial information, customer or vendor information, business operations, lists, files, records, source documents, and other materials provided by Computershare to the Company under this Agreement shall be the sole and exclusive property of Computershare.

5.    The Company hereby acknowledges that Computershare Trust Company, Inc., an Affiliate of Computershare that is involved in the disbursement of dividends, is subject to the privacy regulations under Title V of the Gramm-Leach-Bliley Act, 15 U.S.C. § 6801 et seq., pursuant to which regulations Computershare is required to obtain certain undertakings from the Company with regard to the privacy, use and protection of nonpublic personal financial information of Computershare's clients or prospective clients.

10



Therefore, notwithstanding anything to the contrary contained in this Agreement, the Company agrees that: (1) it shall not disclose or use any Client Data except to the extent necessary to carry out its obligations under this Agreement and for no other purpose; (2) it shall not disclose Client Data to any other party, including, without limitation, its affiliates or third party service providers without the prior written consent of Computershare and an agreement in writing from the other party to use or disclose such Client Data only to the extent necessary to carry out the Company's obligations under this Agreement and for no other purposes; (3) it shall maintain, and shall require all third parties approved under subsection (2) to maintain, effective information security measures to protect Client Data from intentional or accidental unauthorized disclosure or use; and (4) it shall provide Computershare with information regarding such security measures upon the reasonable request of Computershare and promptly provide Computershare with information regarding any failure of such security measures or any security breach related to Client Data. The obligations set forth in this Section shall survive termination of the Agreement.

As used herein, "Client Data" means any nonpublic personal information (as defined in 15 U.S.C. § 6809(4) as it may be amended during the term of this Agreement) provided by Computershare to the Company that concerns any existing, prospective or former shareholder, and includes, but is not limited to: (i) a shareholder's name, address, e-mail address, IP address, telephone number and/or social security number; (ii) the fact that a shareholder has a relationship with Computershare and/or its parent, affiliates or subsidiaries; or (iii) a shareholder's account information, except for information that was initially provided by the Company to Computershare.

6.  In the event that either party receives a request or becomes legally compelled to disclose any confidential information belonging to the other party (whether by oral questions, interrogatories, requests for information or documents, subpoena or similar process), recipient will provide the other party with prompt notice so that it may seek a protective order or other appropriate relief and/or waive the right to demand compliance with the provisions of this Agreement. In the event that who owns the confidential information waives the right to demand compliance, or is denied a protective order or other relief by the highest court or other tribunal of appropriate jurisdiction, recipient may disclose, without liability hereunder, only that portion of the confidential information that recipient is legally obligated to disclose.

## ARTICLE 11

### ADDITIONAL PROVISIONS

1.  **Force Majeure.** Neither party shall be liable to the other, or held in breach of this Agreement, if prevented, hindered, or delayed in performance or observance of any provision contained herein by reason of act of God, riots, acts of war, epidemics, governmental action or judicial order, earthquakes, or any other similar cause (including, but not limited to, mechanical, electronic or communications interruptions, disruptions or failures). Performance times under this Agreement shall be extended for a period of time equivalent to the time lost because of any delay that is excusable under this Section.

2.  **Severability.** If any part of this Agreement, for any reason, is declared invalid, it shall be deemed restated to reflect as nearly as possible in accordance with applicable law the original intentions of the parties. The remainder of this Agreement shall continue in effect as if the Agreement had been entered into without the invalid portion.



3.    **Status of Parties.** The relationship of the parties to each other in the execution and performance of the Agreement shall be that of independent contractors. Nothing in the Agreement or with respect to the obligations or services of Computershare in connection with the Agreement shall constitute Computershare a fiduciary of the Company or any other person.

4.    **Counterparts.** This Agreement may be executed in any number of counterparts, each of which when so executed and delivered will be an original hereof, and it will not be necessary in making proof of this Agreement to produce or account for more that one counterpart hereof.

5.    **Entire Agreement.** This Agreement sets forth the full understanding between the parties with respect to its subject matter and integrates all prior agreements, discussions and understandings.

6.    **Notices.** Any notice or document required or permitted to be given under this Agreement shall be given in writing and shall be deemed received (i) when personally delivered to the relevant party at such party's address as set forth below, (ii) if sent by mail (which must be certified or registered mail, postage prepaid) or overnight courier, when received or rejected by the relevant party at such party's address indicated below, or (iii) if sent by facsimile, when confirmation of delivery is received by the sending party:

   If to the Company:



   If to Computershare:          Computershare Trust Company, Inc.
                                 350 Indiana Street, Suite 800
                                 Golden, Colorado 80401
                                 Attn: _____
                                 Fax: (303) 262-0700

                                 and

                                 Computershare Trust Company, Inc.
                                 Two North LaSalle Street
                                 Chicago, Il 60602
                                 Attn: Keith Bradley
                                 Fax: (303) 601-4357

7.    **Modification.** This Agreement may not be amended or modified in any manner except by a written agreement duly authorized and executed by both parties. Any duly authorized Officer may amend any certificate naming Officers authorized to execute and deliver certificates, instructions, notices or other instruments, provided such amendment is certified by the Company's Secretary, and the Secretary may amend any certificate listing the shares of capital stock of the Company for which Computershare performs services hereunder.

8.    **Successors and Assigns.** This Agreement shall extend to and shall be binding upon the parties hereto and their respective successors and assigns.



9. **Assignment.** Neither party may assign this Agreement without the prior written consent of the other party, except that either party may, without the consent of the other party, assign the Agreement to an Affiliate of that party or a purchaser of all or substantially all of that party's assets used in connection with performing this Agreement.

10. **Absence of Third-Party Beneficiaries.** The provisions of the Agreement are intended to benefit only Computershare and the Company, and no rights shall be granted to any other person by virtue of this Agreement.

11. **Applicable Law and Jurisdiction.** This Agreement shall be governed by and construed in accordance with the laws of the State of Colorado (without reference to choice of law principles), and the parties hereby consent to the exclusive jurisdiction of courts in Colorado (whether state or federal) over all matters relating to this Agreement.

12. **Exhibits.** The following exhibits are attached to this Agreement:

> Exhibit A:    Scope of Services.
> Exhibit B:    Statement of Fees.

13. **Schedules.** The following schedules are attached to this Agreement:

> Schedule I:    Appointment Resolution.
> Schedule II:    Corporate Information Schedule.

[SIGNATURES ON NEXT PAGE]



IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed as of the date first written above.

*ADVANCED Bio/Chem, Inc.*
[NAME OF COMPANY]

By: *Helen R. Park*
Name: *Helen R. Park*
Title: *CHAIRMAN*

COMPUTERSHARE TRUST COMPANY, INC.

By: _____
Name: **Kellie Gwinn**
Title: **Vice President**

By: _____
Name: **John M. Wahl**
Title: **Corporate Trust Officer**

14



ADVANCED BioCHEM, INC (the "Company") hereby represents and warrants that the authorized and issued stock of the Company is as follows:

| Class of Stock and Par Value | Shares Authorized by the Articles or Certificate of Incorporation | (1) Total Shares Now Authorized by the Board of Directors | (2) Shares Issued and Outstanding, Including Treasury Shares | (3) Reserved Shares* |
|---|---|---|---|---|
| COMMON $0.001 | 50,000,000 | 10,645,100 | 10,645,100 | 0 |

Note: The sum of columns 2 and 3 should equal the number in Column 1.

* If shares have been reserved, identify purpose(s):

| Purpose of Reservation: | Number of Shares in Reserve (as of Effective Date): |
|---|---|

The issued shares above are represented by the following number of shares of issued old or reclassified stock (if none, so indicate): NONE.

| Old Class and Par Value | Shares Issued | Unit Rate of Exchange | Total Shares in Terms of New Class | Reserved Shares | CUSIP Number |
|---|---|---|---|---|---|

The Employer Identification Number of the Company is: 76-0654994

Company phone number: 281-364-4016 and fax number 281-363-7935.


**Computershare**

The following persons are duly elected and qualified officers of the Company, presently holding the offices indicated, and their signatures as shown below are genuine:

| Title | Name | Signature |
|-------|------|-----------|
| CHAIRMAN, SECRETARY | HELEN R. PARK | *Helen R. Park* |
| DIRECTOR, TREASURER | IRA L. GOLDKNOPF | *Ira L. Goldknopf* |
| | | |
| | | |
| | | |
| | | |
| | | |

The name and address of legal counsel for the Company is:
3400 CHASE TOWER, 600 TRAVIS ST. LOCKE LIDDELL & SAPP LLP
HOUSTON, TX 77002-3095   ATTN: DAVID PETERMAN
Company counsel phone number: 713-226-1227 and fax number 713-223-3717.

The names of other Transfer Agents and Registrars of the stock of the Company are:

| Class of Stock | Transfer Agent(s) | Registrar(s) |
|----------------|-------------------|--------------|

A copy of each transfer journal, fully describing stock certificates canceled and issued, shall be sent to each of the following (if none are required, so indicate):

STEVE RASH, CHIEF EXECUTIVE OFFICER

•           •           •

I, the undersigned Secretary of the Company, hereby certify that the Company is, and at the time of issuance of all of its stock has been, duly incorporated and in good standing in the state of
NEVADA             , and that all shares of stock listed above, including but not limited to all issued, outstanding, and reserved shares, have been properly and legally issued and properly registered in accordance with appropriate state, federal and any applicable non-U.S. laws.

Witness my hand and seal of the Company this 11 day of November, 2003.

*Helen R. Park*
Secretary

(Corporate Seal)

20



## SCHEDULE A

### SCOPE OF SERVICES

Pursuant to Section 2(e) of the Agreement, Computershare agrees to provide the Services set forth below. Any service not specifically set forth below is not within the scope of Services and shall be subject to additional fees.

**TRANSFER PROCESSING AND ACCOUNT MAINTENANCE**

- Provide services of administrative team led by a Relationship Manager;
- Maintain records of: (i) Share ownership by the Company's shareholders of record; (ii) Share transactions, including all issuances of Shares, transfers, and Share replacements performed by Computershare; (iii) restrictions on any Shares of which it has been informed; and (iv) all other matters relating to the Services;
- Issue and register transfer requests by issuing certificates or, if applicable, through the Direct Registration System;
- Process legal and restricted stock transfers;
- Place and remove stop transfers orders;
- Replace lost, stolen or destroyed securities in accordance with UCC guidelines and Computershare policy;
- Process option exercises within 24 hours;
- Obtain W-9 and W8-BEN certifications;
- Comply with SEC mandated annual lost shareholder search;
- Respond to shareholder inquiries (written, e-mail and web); and
- Provide online access.

**ANNUAL MEETING SERVICES**

- Provide certified shareholder list;
- Provide affidavit of mailing;
- Tabulate returned proxies;
- Provide for internet and telephone voting (separate charge applies);
- Provide solicitor with electronic access and reports during tabulation;
- Receive and merge outside files with common register (separate charge applies);
- Perform special sorts as requested;
- Provide copies of shareholder comments;
- Re-mail conflicting vote proxies and improperly executed proxies;
- Maintain ADP link to receive broker/bank vote transmissions;
- Serve as Inspector of Election and provide on-site proxy voting;
- Provide Final Vote certification; and
- Provide final voted proxy list.

## DIVIDEND DISBURSEMENT

> Make payment of cash dividends to the shareholders of record as of the record date by mailing a check, payable to the registered shareholder, to the address of record or mailing address. Dividends are to be funded by the day checks are placed in the mail;

> Alternatively, upon proper request by a registered shareholder, and provided that funds are on hand at Computershare on or prior to the payment date, make payment to such shareholder through the Automated Clearing House in accordance with the instructions provided by the shareholder; and

> File with the proper federal, state and local authorities such appropriate information returns as are required by law to be filed by the Company concerning the payment of dividends and distributions.

## DIVIDEND REINVESTMENT PLAN SERVICES

> Perform services per the terms and conditions in the specific plan document, attached hereto and made a part of, including:
> - o Administer and maintain plan accounts;
> - o Enroll and flag new account participation;
> - o Process shareholder requests (sales, share withdrawals, optional cash investments);
> - o Distribute plan literature;
> - o Reinvest dividends as necessary;
> - o Provide for ACH investments, if applicable; and
> - o Send detailed plan statements after every transaction.

## DIRECT REGISTRATION SYSTEM

> Register, issue and transfer certificates electronically per the terms and conditions of the DRS appointment letter and the Sales Order Processing Facility, attached hereto and made a part of.

## ESCHEATMENT SERVICES

> Prepare and file annual abandoned/unclaimed property reports in accordance with each state's abandoned property laws;

> Provide release and indemnification reports when required;

> Maintain records of each state filing and update shareholder files accordingly; and

> Complete reasonable due diligence prior to each filing.

## ADDITIONAL ITEMS

> Computershare may perform additional services upon request for an additional fee. Such additional fees shall be based upon the nature of the work required (e.g., stock splits, secondary offerings, additional stock class offerings, etc.); programming and staff time will be billed at the then current rates



Exhibit 8
Statement of Fees

# Fee schedule

### IPO Administrative fee

A one time set up fee of $1,250.00 will be billed to Issuer. This fee includes the issuance of shares for the initial public offering, set up of existing shareholder files, coordinate with issuer, counsel and underwriter during all aspects of IPO process. Custodial agent services available upon request.

### Annual Inclusive fee

The annual fee for our services as transfer agent will be $7,800.00 per annum billed monthly. This fee includes account maintenance, regular transfers, standard annual meeting organization, standard management reports, online issuer access and shareholder communications.

Services excluded from the bundled fee:

### Annual meeting

- Request for proxy tabulation — Included
- Solicitation of brokers (first one included) — $ 75.00 each
- Electronic voting — $ 950.00 one-time set-up
  - Telephone voting
    - Additional questions to standard script — $ 0.15 per question
    - Per call, per minute using standard script — $ 0.25
  - Internet voting
    - Author's alterations — $ 200.00 each time
    - Per vote — $ 0.21
    - Custom programming — At bid

### Escheatment

- Annual administrative fee
  - If less than 1,000 holders — $500.00
  - 1,001-2500 holders — $750.00
  - Over 2,500 holders — 1,000.00
- Fee per state report (negative reports at no charge)* — $50.00
- Fee per holder on report * — $1.00
- SEC semi-annual search per lost holder * — $0.50

*Per item charges will be billed separately for spring and fall escheat periods.

Additional services: Separate fee estimates for services such as dividend payments, corporate actions and other services not included in this proposal will be provided upon request by and discussion with you prior to Computershare taking any action.

Computershare proprietary and confidential.
Not for reproduction or disclosure without prior written permission.

### Record and File Conversion
- Convert current and historical files and records as maintained by issuer's current stock transfer agent

### Billing
- Fees are subject to change with a 30 day notice
- Late charges are 1.5% per month on outstanding; balances owing 45 days from date of invoice.
- We reserve the right to bid any unforeseen charges not covered in this proposal. Charges for services other than those quoted herein will be based upon an analysis of the work required. Programming and staff time will be billed at current rates.
- All payments are in U.S. Dollars.

### Out-of-pocket expenses
- Expenses for supplies and other items such as postage and insurance will be included on the monthly invoices.
- Travel and accommodation expenses to attend Annual Meeting will be charged as an out-of-pocket expense.

### Terms and services
- Additional charges will be imposed for services not specifically priced
- Tapes from outside sources must be provided in a format acceptable to Computershare.
- A 15% termination fee (minimum $750) will be charged when transferring records to another agent. This fee covers the expenses and continued support while converting to a another agent
- The fees herein are guaranteed for two years commencing with acceptance of this proposal

Computershare proprietary and confidential.
Not for reproduction or disclosure without prior written permission.